UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
                                        :
TRIPLENET PRICING, LLC,                 :         **Civil Action No. _____**
                                        :
                    Plaintiff,      :
                                        :
              v.                          :         **COMPLAINT AND JURY TRIAL**
                                        :         **DEMAND**
BEAR DOWN BRANDS, LLC and       :
SPRIG TECHNOLOGIES, d/b/a         :
GREY SCOUT,                            :
                                        :         *Electronically Filed*
                    Defendants.      :
-------------------------------------------------------- x

Plaintiff Triplenet Pricing, LLC ("Plaintiff"), by and through its counsel, for its Complaint against Bear Down Brands, LLC ("Bear Down") and Sprig Technologies, Ltd ("Sprig") (collectively, "Defendants"), alleges as follows:

**INTRODUCTION**

1. Defendants are engaged in a nefarious scheme to manipulate, fix, and control the pricing for consumer products on online marketplaces.

2. In furtherance of the scheme, Defendants knowingly and deliberately submit false reports of intellectual property infringement to online platforms, including Amazon.com, in order to prevent third parties from reselling genuine products on the marketplace at competitive prices.

3. Defendants' nefarious actions cause consumers to pay more for common goods, undermine Amazon's competitive pricing policies, and intentionally caused harm to Plaintiff.

4. This action seeks redress for these tortious, defamatory, and anticompetitive activities.

## PARTIES

5. Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 2741, West 23rd Street, Brooklyn NY.

6. On information and belief, Defendant Bear Down is a company organized and existing under the laws of Delaware, with a principal place of business at 2803 S Yale St, Santa Ana, California 92704.

7. On information and belief, Defendant Sprig/ GreyScout is a limited liability company with its principal place of business in Dublin, Ireland.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*, including 15 U.S.C. § 1121; and 28 U.S.C. §§ 1331, 1338, and 1367; Sherman Anti-Trust Act, 15 U.S.C. §1; and pendant jurisdiction under the New York Donnelly Antitrust Act, NY Gen Bus. Law §340.

9. Venue is proper in this district pursuant to 15 U.S.C. § 22, as the Defendant(s) conduct business, have agents, or are otherwise found in this district.

10. Defendants are subject to specific jurisdiction in this Court, *inter alia*, because they conduct business in this District and have committed at least some of the acts complained of herein within this District.

11. On information and belief, Defendants do business in the State of New York.

12. On information and belief, Defendant Bear Down sells large quantities of various products, including consumer products, to customers in New York, engages distributors based in New York, maintains an interactive website accessed by residents of New York, and otherwise avails itself of the privilege of doing business in the State of New York.

13. Each of the Defendants have purposely directed their activities, including the illegal acts against Plaintiff described below, toward this District and this action arises from those activities.

14. Specifically, at all relevant times, Defendants were aware the Plaintiff resided in New York and that their illegal acts would cause harm to Plaintiff in New York. Specifically, Plaintiff's Amazon storefront identifies Plaintiff's place of business in New York.

15. On information and belief, Defendants' illegal acts against Plaintiff described below were made to further Defendant Bear Down's transaction of business in New York by improperly excluding a New York competitor, Plaintiff, from conducting business in New York.

16. Venue in this District is proper under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims occurred in this District and the Defendants are subject to personal jurisdiction in this District.

**BACKGROUND FACTS**

17. Defendant Bear Down is in the business of manufacturing and distributing consumer products, including products sold under the Bear Down marks of Pure Enrichment and Bentgo ("Bear Down Products").

18. Defendant Bear Down is the owner various registrations including, but not limited to, U.S. Trademark Registration No. 97631610 for Pure Enrichment, and Trademark Registration No. 86876041 for Bentgo ("the Bear Down Registrations").

19. Plaintiff is in the business of lawfully acquiring and re-selling various consumer products for a profit.

20. Plaintiff resells products through an Amazon storefront.

21. Since its formation, Plaintiff has served thousands of customers through its Amazon storefront.

22. Defendants' illegal actions have irreparably damaged, and threaten to destroy, Plaintiff's successful business.

## ONLINE MARKETPLACES

23. Upon information and belief, Amazon is the world's largest online retailer.

24. According to published reports, Amazon is worth more than the next eight largest retailers located in the United States combined. *See* JP Mangalindan, *Amazon is now worth more than America's 8 largest retailers combined*, Yahoo Finance (Jan. 25, 2017), https://finance.yahoo.com/news/amazon-is-now-worth-more-than-americas-8-largest-retailers-combined-124101625.html.

25. Amazon's online e-commerce platform allows for third-parties, like Plaintiff, to sell products on its e-commerce platform.

26. The privilege of selling on Amazon is highly advantageous, as Amazon provides third-parties with exposure to the world marketplace on a scale that no other online retailer can currently provide.

27. From the outset, Plaintiff has had a contractual and business relationship with Amazon, such that Plaintiff was and is permitted to sell products on Amazon's e-commerce platform.

28. Third-party sellers, like Plaintiff, create an online storefront on Amazon. When a customer buys a product on Amazon, the customer can see the online store from which the customer is purchasing a product. Thus, Plaintiff has the online equivalent of a brick-and-mortar store.

29. A significant portion of Plaintiff's business is derived from the sale of products on Amazon and, in particular, through its Amazon storefront.

30. Once Plaintiff acquires products from reputable sources, Plaintiff resells the same products on Amazon at a profit.

31. In general, transactions on Plaintiff's Amazon storefront are completed by Amazon, whereby Amazon ships Plaintiff's products from an Amazon warehouse (known as "Fulfilment by Amazon" or "FBA").

32. Plaintiff has invested significant efforts into building a successful and reputable Amazon storefront.

33. Plaintiff's Amazon storefront a holds a near perfect customer rating.

34. A small sample of Plaintiff's recent reviews are shown below:

★★★★★ "Exactly what I ordered"

By Gary Wood on December 9, 2024.

★★★★★ "Arrived on time and in good order."

By g on December 8, 2024.

★★★★★ "Excellent price"

By VINCENT FARINELLA on December 7, 2024.

★★★★★ "Would order from this company again. Arrived earlier than

By Mike on December 7, 2024.

★★★★★ "Will buy again."

By Centurion on December 7, 2024.

35. Any harm that comes to the relationship between Plaintiff and Amazon creates a potential for serious and irreparable injury to Plaintiff.

**DEFENDANTS ATTEMPT TO STIFLE COMPETITION BY FILING FALSE INTELLECTUAL PROPERTY COMPLAINTS**

36. On information and belief, Defendants seek to increase their profits by controlling the distribution and pricing of their products, including the Bear Down Products, through unlawful means.

37. As demonstrated below, Defendants have engaged in a coordinated effort to preclude select third-parties from reselling genuine Bear Down Products on online marketplaces by false allegations of intellectual property infringement and defamation.

38. On information and belief, the purpose of these false complaints and defamatory statements was to prevent Plaintiff from selling genuine Bear Down Products on Amazon.

39. On information and belief, the purpose of these false complaints was to damage Plaintiff's reputation and goodwill, such that Amazon would suspend or terminate its relationship with Plaintiff.

40. Because Plaintiff sells only genuine products through its Amazon storefront, Defendants have no legitimate intellectual property claim(s) against Plaintiff.

41. Under the first sale doctrine, Plaintiff is lawfully permitted to re-sell Bear Down Products without violating the intellectual property rights or other legal rights of Defendants.

42. The first sale doctrine provides that, once a manufacturer places a product in the stream of commerce through its first sale, it can no longer enforce its intellectual property rights with regard to re-sellers, so long as the re-sellers are selling authentic, unaltered products.

43. It is well-known among brand owners that Amazon has a policy of acting on virtually any notice of intellectual property infringement, whether legitimate or not.

44. As one Amazon expert explained:

> In order to meet a minimum liability standard, Amazon will act upon properly submitted and completed notice claims of infringement. They will notify specified marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. The rest though, is up to you. And, unless you (and possibly your legal team) can prove that the Notice claim is false, Amazon considers it valid and actionable.
>
> ***Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.*** Amazon [is] not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications.
>
> They don't independently verify that any of the information is actually correct, or valid. The rights owner makes a legally-binding declaration in the form, and signs it.

*See* Chris McCabe, *False Infringement Claims are Rife on Amazon*, WebRetailer (Apr. 11, 2018), https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/ (emphasis added).

45. On information and belief, Defendants were, at all relevant times, aware of the foregoing Amazon policy with respect to reports of intellectual property infringement.

46. On information and belief, Defendants were, at all relevant times, aware that Amazon will act on reports of trademark infringement, regardless of the truth of the report.

47. Defendants filed complaints with Amazon alleging that Plaintiff was selling counterfeit goods, thus, infringing on Bear Down Products and on the Bear Down Registrations.

48. Defendants knew, or should have known, that such allegations were false.

49. Each complaint submitted to Amazon was signed under penalty of perjury by an employee or agent of Defendants.

50. On information and belief, the complaints were submitted by Defendant GreyScout under penalty of perjury.

51. For example, when submitting an infringement report to Amazon, an intellectual property rights owner must read and accept the following statements:

> "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

> "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

Report Infringement, https://www.amazon.com/report/infringement (last visited October 31, 2019).

52. Once confirmed through discovery, all other individual(s) responsible for the false intellectual property complaints described below, will be added as defendants in this action.

53. On or about July 30, 2024, Plaintiff received a notice from Amazon stating that Defendants submitted a report of trademark infringement alleging that the Bear Down Products sold by Plaintiff were counterfeit and infringed the Bear Down Registrations.

54. Specifically, the report related to Amazon identification number and was assigned Complaint ID: 15720839651.

55. Bear Down and GreyScout had filed individual complaints against Plaintiff charging it with selling counterfeit products on 6/2/2023, 7/18/2023, 5/13/2023, and on 7/30/2023 when Plaintiff's account was ultimately closed down by Amazon.

56. The Bear Down Product identified in the above report was genuine.

57. The Bear Down Product identified in the above report was manufactured and distributed by Bear Down.

58. On information and belief, prior to filing the above report, Defendants knew, or should have known, that the Bear Down Product sold by Plaintiff did not infringe Bear Down's trademark rights or the Bear Down Registration.

59. On information and belief, Defendants' allegation that the above Bear Down Product was infringing was knowingly false and made in bad faith.

60. On information and belief, Defendants have filed similar false complaints against other Amazon sellers.

**DEFENDANTS REFUSE TO RETRACT THEIR FALSE REPORT TO AMAZON**

61. The above false reports were part of an ongoing and continuous course of conduct by Defendants to interfere in Plaintiff's ability to resell Bear Down Products.

62. On or about August 1, and August 2, 2024, Plainitff contacted Defendants requesting that their claims against Plaintiff of selling counterfeit products be retracted and that Amazon be notified thereof. In support, Plaintiff even furnished invoices from Defendant's own distributors where Plaintiff purchased its products from, but all to no avail as Defendants refused to withdraw their complaint claiming that Plaintiff was selling counterfeit products.

63. The false reports filed by the Defendants were part of a consistent pattern of conduct designed to disrupt the Plaintiff's ability to resell Bear Down Products.

64. Despite the ongoing harm to the Plaintiff's business, the Defendants refused to retract their complaint, leaving the Plaintiff's operations effectively held hostage by Bear Down's allegations. As a result, the Plaintiff faced continuous financial damage. Faced with no other option, the Plaintiff was forced to remove Bear Down products from the market to prevent further losses and damages to its business. On August 6, 2024, the Plaintiff had no choice but to comply with Bear Down's demand to cease all sales of their products, and notifying the Defendants accordingly, in order to avoid incurring further financial harm.

**HARM TO PLAINTIFF**

65. As a result of the above false rights complaints, Plaintiff's listings relating to Bear Down Products were suspended, resulting in an immediate loss of revenue.

66. It is well-known that complaints to Amazon put Amazon sellers in jeopardy of a full selling suspension, meaning that Plaintiff's ability to sell any and all products on Amazon would be lost.

67. On information and belief, Defendants were aware that complaints to Amazon, particularly those alleging trademark infringe, result in selling suspensions.

68. On information and belief, Defendants have used these same tactics, namely filing false infringement complaints, against other Amazon sellers.

69. At no time has Plaintiff ever sold Bear Down Products that infringed any of Bear Down's intellectual property or other legal rights.

70. The Bear Down Products sold by Plaintiff were, at all times, authentic products bearing the name of the manufacturer, and were otherwise, at all times, sold lawfully.

71. Defendants knowingly made false intellectual property rights complaints against Plaintiff.

72. Upon information and belief, the true purpose of these complaints was to ensure the suspension of Plaintiff's marketplace listings, control pricing and eliminate fair competition.

73. As result of Defendants' false complaints, Plaintiff's performance metrics were irreparably damaged.

74. It is well-known that as much as 90% of all Amazon sales occur from Amazon's "buy box," a section of an Amazon product detail page where customers can add a product to their cart.

75. Amazon determines which seller gets the "buy box" based on a number of factors, including the seller's performance metrics.

76. Defendants' false complaints have damaged Plaintiff's metrics and caused Plaintiff to lose the "buy box" on many of its product listings.

### COUNT I - DECLARATORY JUDGMENT
(No Trademark Infringement)

77. Plaintiff realleges and incorporates all previous paragraphs.

78. Defendants manufacture and distribute Bear Down Products and place such products into the stream of commerce.

79. Plaintiff stocks, displays, and resells new, genuine Bear Down Products, each bearing a true mark.

80. Defendants have submitted one or more complaints to Amazon that state that Plaintiff sold Bear Down Products that infringed, *inter alia*, the Bear Down Registrations.

81. The Bear Down Products sold by Plaintiff were genuine and in their original packaging.

82. On information and belief, at the time that Defendants submitted their complaints to Amazon, Defendants had never purchased or examined any Bear Down Product offered for sale by Plaintiff.

83. Defendants' complaints caused the suspension of Plaintiff's selling privileges as they relate to Bear Down Products.

84. As a result of the suspension of Plaintiff's selling privileges, Plaintiff was unable to sell inventory of Bear Down Products on the Amazon.com platform.

85. Defendants' complaints put Plaintiff in jeopardy of permanent suspension of all selling privileges, which will cause extraordinary, irreparable, and untold damage on a business that is in the virtually exclusive business of selling products on e-commerce platforms.

86. Under these facts, an actual controversy exists between Plaintiff and Defendants.

87. Plaintiff is entitled to a declaratory judgment that it has not violated Defendants' trademark rights or other rights, whether under Federal or State law.

**COUNT II – DEFAMATION**

88. Plaintiff realleges and incorporates all previous paragraphs.

89. Defendants published false statements to Amazon regarding Plaintiff as described in this Complaint, including reporting to Amazon that Plaintiff's Bear Down Products infringed the Bear Down Registrations.

90. Plaintiff did not infringe the Bear Down Registration.

91. Defendants' false statements were injurious to Plaintiff's business because they caused Amazon to suspend Plaintiff's selling privileges related to Bear Down Products.

92. Defendants' false statements were injurious to Plaintiff's business because they caused Amazon's and Plaintiff's customers to avoid purchasing products from Plaintiff.

93. Upon information and belief, Defendants were, at a minimum, negligent in making the false statements to Amazon because, among other things, Defendants knew that Plaintiff sells genuine products.

94. Defendants' false statements are not protected by any privilege.

95. Defendants acted with actual malice or with reckless disregard for the truth of the matter contained in Defendants' false statements to Amazon and Plaintiff's customers.

96. False statements that are directed to the honesty, efficiency, or other business character traits amount to defamation per se.

97. Here, Defendants published statements that Plaintiff was selling counterfeit goods and, thus, engaged in trademark infringement.

98. Defendants' false statements constitute defamation per se.

99. Additionally, Plaintiff incurred special harm, including, but not limited to, suspension from selling Bear Down Products and damage to its relationship with Amazon and its customers.

100. Whether by defamation per se or by special harm, Plaintiff has suffered injury as Plaintiff's selling privileges related to Bear Down Products have been suspended and Plaintiff has lost sales of Bear Down Products and many other products.

101. Plaintiff is entitled to damages, costs, and fees as allowed by law.

102. Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

**COUNT III – TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS**

103. Plaintiff realleges and incorporates all previous paragraphs.

104. Plaintiff has had an advantageous business relationship with Amazon, which allows Plaintiff to sell on Amazon's e-commerce platform as a third-party seller.

105. Plaintiff is also in a contractual relationship with Amazon. Specifically, Plaintiff has entered into the Amazon Services Business Solutions Agreement ("BSA") with Amazon.

106. The BSA, including Paragraph S-1.2: (1) allows Plaintiff to list products for sale on the Amazon marketplace and promote the products; and (2) requires that Amazon process orders and remit payment to Plaintiff for sales.

107. At all relevant times, Defendants were aware of Plaintiff's business relationship with Amazon, as well as Plaintiff's contractual relationship with Amazon.

108. At all relevant times, Defendants were aware of the terms and conditions of Amazon's BSA and related policies, as well as the advantageous business relationship that comes with being an Amazon seller.

109. Defendants intentionally and improperly interfered with Plaintiff's advantageous and contractual relationship with Amazon by complaining, in writing, to Amazon, that Plaintiff was selling infringing products.

110. Defendants' conduct directly and proximately caused disruption of Plaintiff's relationship and contract with Amazon, including a breach of Paragraph S-1.2 of the BSA.

111. Defendants intended to cause Amazon to suspend Plaintiff's ability to sell Bear Down Products on Amazon and therefore interfere with the business relationship Amazon had with Plaintiff.

112. Defendants had actual knowledge that their actions would cause Amazon to suspend Plaintiff's ability to sell Bear Down Products on Amazon.

113. Defendants' accusations of infringement, made directly to Amazon, were for the improper purpose of suppressing competition.

114. Defendants' actions interfered with Plaintiff's business relationship with Amazon and proximately caused Plaintiff's listings of Bear Down Products to be suspended.

115. Defendants' actions interfered with Plaintiff's business relationship with Amazon and proximately caused the suspension of Plaintiff's selling privileges.

116. The intentions of Defendants are demonstrated by the fact that Defendants did not perform any test purchases prior to alleging that the products sold by Plaintiff were infringing.

117. The intentions of Defendants are demonstrated by the fact that Defendants have never offered any coherent explanation for their reports of trademark infringement.

118. Defendants' accusations were false and were made maliciously and with ill will.

119. Plaintiff has been damaged by suspension of these listings by losing revenue related to Bear Down Products.

120. Plaintiff is entitled to damages, costs and attorneys' fees as allowed by law.

121. Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

## COUNT IV - VIOLATION OF SHERMAN ANTI-TRUST ACT

123.. Plaintiff realleges and incorporates all previous paragraphs.

124. Plaintiff brings this claim under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, which prohibits any contract, combination, or conspiracy in restraint of trade or commerce among the several states or with foreign nations.

125. Upon information and belief Defendant(s) have engaged in a conspiracy or agreement with other entities or individuals to maintain and fix the prices of its products as charged to the public and amongst its distributors so that the prices shall all remain the same in the marketplace.

126. The actions of Defendant(s) have had the purpose and effect of restraining trade in violation of the Sherman Act and have caused harm to competition in the retail marketplace for prices of its products.

127. As a result of the unlawful conduct, competition in the relevant market has been significantly harmed, resulting in the lack of competition and illegal maintenance of its prices as charged to the consuming public.

128. Plaintiff has suffered and will continue to suffer economic harm, including overcharges and loss of market share resulting therefrom.

129. The anticompetitive practices of Defendant(s) have harmed consumers and the competitive process in the relevant market.

# COUNT V- VIOLATION OF THE DONNELLY ANTITRUST ACT

130. Plaintiff realleges and incorporates all previous paragraphs.

131. This Court has jurisdiction over this matter pursuant to N.Y. Gen. Bus. Law § 340 et seq. (New York Donnelly Antitrust Act).

132. Upon information and belief, Defendant(s) have unlawfully engaged in price-fixing, market allocation, and/or other anticompetitive conduct, which constitutes a restraint of trade in violation of N.Y. Gen. Bus. Law § 340.

133. As a result of Defendant(s)' conduct, competition has been harmed, causing Plaintiff to suffer injuries such as overcharges and loss of market share.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for judgment as follows:

A. An order declaring that Plaintiff has not infringed any valid and enforceable intellectual property right owned by Defendants, including the Bear Down Registrations;

B. Preliminary and permanent injunctive relief restraining Defendants, their agents, servants, employees, successors and assigns, and all others in concert and privity with Defendants, from filing complaints with Amazon and any other e-commerce platform.

C. Injunctive relief requiring Defendants to retract all complaints that they have filed against Plaintiff;

D. An award of all damages that Plaintiff has suffered as a result of Defendants' defamation;

E. An award of all damages that Plaintiff has suffered as a result of Defendants' tortious interference;

F. Find that Defendant(s) have violated Section 1 of the Sherman Antitrust Act, 15 15 U.S.C. § 1;

G. Enjoin Defendant(s) from continuing or engaging in any conduct that restrains trade in violation of the Sherman Act;

H. Award Plaintiff compensatory and punitive damages, as well as costs and attorneys' fees, in an amount to be determined at trial;

I. Declare that Defendant(s) have violated the New York Donnelly Antitrust Act, N.Y. Gen. Bus. Law § 340 et seq.;

J. Issue an injunction prohibiting Defendant(s) from continuing the unlawful conduct;

K. Award Plaintiff treble damages and attorneys' fees as provided by statute;

L. An award of all costs and fees incurred in this Action; and

M. Such other and further relief as the Court shall find just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: January 1, 2025                    Respectfully submitted,

                                               ANTAR LAW FIRM, PLLC

                           By: /s/ _____
                                 Solomon E. Antar
                                 *Attorney for Plaintiff*
                                 Office & P.O. Address
                                 44 Court Street, Ste. 1207
                                 Brooklyn, NY 11201
                                 Tel. 718-769-3200
                                 solomon@antar.law